# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

MAUREEN MOLZ,

        Plaintiff,

v.

FEDERAL AVIATION
ADMINISTRATION, SHELLEY YAK,
JAIME FIGEROUA, JOHN DOES 1-
10,

        Defendants.

No. 1:21-cv-20039-NLH-SAK

**OPINION**

---

**APPEARANCES**:

MARK J. MOLZ, ESQ.
1400 ROUTE 38 EAST
P.O. BOX 577
HAINESPORT, NEW JERSEY 08036

    *Attorneys for Plaintiff*.

JOHN ANDREW RUYMANN, ESQ.
OFFICE OF THE U.S. ATTORNEY
402 EAST STATE STREET, SUITE 430
TRENTON, NEW JERSEY 08608

SAMANTHA R. D'AVERSA, ESQ.
DEPARTMENT OF JUSTICE, USAO
MITCHELL H. COHEN BUILDING & U.S. COURTHOUSE
401 MARKET STREET, P.O. BOX 2098
CAMDEN, NEW JERSEY 08101

    *On behalf of Defendants*.

**HILLMAN**, District Judge

    This matter is presently before the Court by way of a

Motion to Dismiss from the Federal Aviation Administration

("FAA"), Shelley Yak, Jaime Figueroa, and John Does 1-10 (collectively, "Defendants").  (ECF No. 9).  For the reasons stated below, Defendants' Motion to Dismiss will be granted.

## BACKGROUND

Plaintiff Maureen Molz filed her Complaint on November 17, 2021 alleging one Count of Defendants' violation of the New Jersey Law Against Discrimination ("NJLAD") for discrimination based on sex, sexual orientation, and age.  (ECF No. 1 at 26-27).  Plaintiff alleges discrimination and a hostile work environment created by her two supervisors, Director Shelley Yak and Division Manager Jaime Figueroa,[1] between her promotion to Supervisor, Aviation Technical Systems Specialist in 2017 and Plaintiff's retirement in 2019.

While Plaintiff does not provide specific dates, she describes her transition into a new position where she was "meticulously micromanaged" by Director Yak.  (Id. at 5). Plaintiff further alleges: that her initials were forged on a "concurrence grid" on April 18, 2018; that she was forced to walk "very far" to Director Yak's office for meetings despite having knee pain; that she had several "extremely difficult" conversations with her supervisors; that her peers were afraid

---

[1] Plaintiff notes that at some point, Defendant Figueroa was promoted to Deputy Director.  According to the Complaint, at all relevant times Defendant Figueroa was in a supervisory position to Plaintiff.  (ECF No. 1 at 3-4).

to support her in fear of "anger[ing] Director Yak"; that her
supervisors were excluding her from meetings; and that her
supervisors were pressuring her to retire.  (Id. at 5, 7-8, 12-
13, 17-18, 22).  Plaintiff states that Director Yak "was pushing
[her] hard for no apparent reason," (id. at 10), and that she
"never saw any other manager being treated with such disrespect
and blatant unfairness."  (Id. at 13).

Specific to Defendant Yak, Plaintiff alleges several
particular incidents.  In one undated meeting, Plaintiff alleges
that Director Yak insulted her by insinuating that Plaintiff was
an "egg head" meaning "not a smart technical professional."
(Id. at 13).  Plaintiff also asserts that on January 17, 2019
Director Yak compared a government shutdown to Superstorm Sandy,
knowing that Plaintiff had lost her home in the storm, stating
that "a man-made tragedy is worse than a natural disaster,"
which Plaintiff attributed to "a problem with her tolerance of
Lesbians."  (Id. at 14).

Plaintiff also alleges incidents with Defendant Figueroa.
On November 1, 2018, after a meeting where Plaintiff was left
shaken, Defendant Figueroa called her at home because he was
"worried about her," and told Plaintiff "please don't slit your
wrists."  (Id. at 11).  Plaintiff also alleges that Defendant
Figueroa called out to Plaintiff in the office saying that she
"look[ed] good, 'You look just like your younger sister.'"  (Id.

at 25).  This distressed Plaintiff because her sister had "died tragically," but Plaintiff does not indicate whether Defendant Figueroa knew of her sister's passing.  (Id.).

Plaintiff further asserts that Defendant Figueroa "communicated degrading, sexually explicit filth to the Plaintiff[.]"  (Id. at 21).  She alleges inappropriate text messages from Defendant Figueroa consisted of: in December 2018, she received two texts of "embarrassing pictures of President Trump" which she asserts is a Hatch Act violation and "[p]unishment ensu[ed]"[2]; on March 19, 2019, she received a text that included a "sexually offensive and scary video"; on March 28, 2019 Defendant Figueroa showed a picture of "Donald Trump's face on a naked woman's body sitting on Vladmir Putin's lap with a caption 'collusion cologne'" from his phone on a work flight, which Plaintiff described as "clear and abusive" due to its "sexual/homophobic" nature.  (Id. at 11, 16, 19-21).

Plaintiff asserts these actions made her feel "alienated, bullied, and dismissed."  (Id. at 9).  Plaintiff alleges that her work environment became so unbearable that she went out on sick leave for approximately three months shortly after May 3, 2019.  (Id. 24-25).  Finally, Plaintiff alleges that this environment caused her constructive discharge into retirement

---

[2] Plaintiff did not provide further details.

but does not indicate what date that was.  (Id. at 26).

Defendants filed a motion to dismiss on March 1, 2022. (ECF No. 9).  Defendants assert several fatal deficiencies with Plaintiff's Complaint.  First, Defendants argue that there are several jurisdictional issues with the Complaint, including: that the Parties are not proper pursuant to 42 U.S.C. § 42 2000e-16(c), that there is a lack of subject matter jurisdiction based on sovereign immunity, that Plaintiff failed to exhaust her administrative remedies, and that her claims are time-barred.  (Id. at 16-18, 20-21).  Defendants also assert that her pleadings are inadequate to support her discrimination and hostile work environment claims of sex, sexual orientation, and age discrimination.  (Id. at 22).

Plaintiff filed her response on April 4, 2022.  (ECF No. 14).  The brief does not substantively address Defendants' legal arguments.  Instead, Plaintiff asserts that she has stated a claim for relief based on her "short and plain statement of the claim," generally citing to the Federal Rule of Civil Procedure 12(b)(6) standards for stating a claim.  (Id. at 1-2).

Additionally, for the first time, in her response Plaintiff asserts a claim for intentional infliction of emotional distress, and avers that she filed a Tort Claims Notice asserting emotional distress and harassment "on or about February 17, 2020."  (Id. at 2-3).  Plaintiff further requests

the Court's permission to amend the Complaint and to "name the proper Defendants including the United States."  (Id. at 4).

Defendants filed their reply on April 11, 2022.  (ECF No. 15).  Defendants note that Plaintiff did not rebut or address the legal arguments in their motion to dismiss.  (Id. at 2). Defendants also assert that the addition of the tort claim for intentional infliction of emotional distress is procedurally improper as it was not raised in her Complaint, and that such a claim is precluded by Title VII and the Age Discrimination in Employment Act ("ADEA") which provide the exclusive remedy for discrimination claims stemming from federal employment.  (Id. at 2-5).  Finally, Defendants argue that Plaintiff should not be given the opportunity to amend her Complaint because it would be futile due to two uncurable defects: that Plaintiff has failed to exhaust her administrative remedies, and that her claims are time-barred.  (Id. at 5-7).

Defendants also filed a Motion to Seal on March 1, 2022, to seal an exhibit attached to Defendants' Motion to Dismiss.  (ECF No. 11).  Both of these motions are now ripe for adjudication.

## DISCUSSION

## I.   Standard for Motion to Dismiss Under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs a motion to dismiss for lack of standing, since "standing is a jurisdictional matter."  Ballentine v. United States, 486 F.3d

806, 810 (3d Cir. 2007).  Standing "is a threshold
jurisdictional requirement, derived from the 'case or
controversy' language of Article III of the Constitution." <u>Pub.
Interest Research Grp. of N.J., Inc. v. Magnesium Elektron,
Inc.</u>, 123 F.3d 111, 117 (3d Cir. 1997).  A plaintiff must
establish his or her standing to bring a case in order for the
court to possess jurisdiction over his or her claim.  <u>Id</u>.

"A challenge to subject matter jurisdiction under Rule
12(b)(1) may be either a facial or a factual attack." <u>Davis v.
Wells Fargo</u>, 824 F.3d 333, 346 (3d Cir. 2016).  "A court ruling
on a facial attack considers only the complaint, viewing it in
the light most favorable to the plaintiff.  A factual attack, in
which the defendant contests the truth of the jurisdictional
allegations, is a different matter: the court need not treat the
allegations as true[.]"  <u>Long v. SEPTA</u>, 903 F.3d 312, 320 (3d
Cir. 2018) (internal citations omitted).

"In reviewing a factual attack, the court may consider
evidence outside the pleadings."  <u>Gould Elecs. Inc. v. United
States</u>, 220 F.3d 169, 176 (3d Cir. 2000).  Because the Federal
Defendants make a factual attack on subject matter jurisdiction,
the Court may consider the papers attached to Defendants'
briefings.  <u>See Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549
F.2d 884, 891 (3d Cir. 1977) ("Because at issue in a factual
12(b)(1) motion is the trial court's . . . very power to hear

7

the case[,] there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.").

## II.   Analysis

### a. Subject Matter Jurisdiction

Defendants argue that Plaintiff lacks standing to bring her NJLAD claim and thus the Court lacks subject matter jurisdiction over this case.  Because jurisdiction is a threshold matter, the Court must address the issue of subject matter jurisdiction before it may look to the Plaintiff's case on the merits.  Pub. Interest Research Grp. of N.J., Inc., 123 F.3d at 117.

#### i.   State Law Employment Claims Against Federal Defendants

Defendants note that Plaintiff asserts only one count of discrimination and hostile work environment based on sex, sexual orientation, or age under the NJLAD.

Title 28, U.S.C. § 1346 generally confers subject matter jurisdiction for plaintiffs to bring civil actions against the United States.  See 28 U.S.C. § 1346(b)(1) ("[T]he district courts . . . shall have exclusive jurisdiction of civil actions

on claims against the United States, for money damages, [] for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.").

Plaintiff's single count against Defendants asserts a claim under the NJLAD.  We note that unlike its federal counterparts, the NJLAD's statute of limitations is two years and it does not require plaintiffs to exhaust administrative remedies prior to seeking relief in the courts.  See Anjelino v. New York Times Co., 200 F.3d 73, 97 (3d Cir. 1999) (citing Montells v. Haynes, 627 A.2d 654 (N.J. 1993) ("[T]he Montells court found that the two-year statute of limitations would apply uniformly to all NJLAD claims[.]"); Hashem v. Hunterdon Cnty., No. 15-8585, 2016 U.S. Dist. LEXIS 134055 at *27 (D.N.J. Sept. 29, 2016); see also N.J.S.A. § 10:5-13 (a plaintiff may "initiate suit in Superior Court under [this act] without first filing a complaint with the division or any municipal office.").

The fact that Plaintiff's only claim is brought under the NJLAD presents an issue because a claim under the NJLAD may not be asserted against the Federal Defendants.  The NJLAD is not a viable cause of action against the Federal Defendants here

because the United States "is immune from suit save as it consents to be sued," and "absent a specific waiver of sovereign immunity, the Courts lack subject matter jurisdiction over claims against the federal government and its agencies." United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Dalm, 494 U.S. 596, 608 (1990).  The United States has not waived sovereign immunity for state law discrimination claims.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212 (1983).  This immunity extends to federal agencies.  See Chandler v. Roudebush, 425 U.S. 840 (1976). Whereas Title VII waives sovereign immunity for claims brought by federal employees, the United States has not waived its sovereign immunity with respect to state law claims of discrimination.  See Goode v. United States Dep't of Homeland Sec., 815 Fed. App'x 643, 645 (3d Cir. 2020) (citing Holt v. Shinseki, No. 13-22, 2013 U.S. Dist. LEXIS 154978 at *6-7 (W.D. Pa. Sept. 30, 2013); Leitch v. MVM, Inc., No. 03-4344, 2004 WL 1638132, at *7 (E.D. Pa. July 21, 2004) (no waiver with respect to state anti-discrimination claims such as the Pennsylvania Human Relations Act and the New Jersey Law Against Discrimination)).

Further, Congress has designated Title VII and the ADEA to

10

be the sole statutory remedy for federal employees to bring
workplace discrimination claims of sex, sexual orientation, and
age (respectively) against a federal employer.  See Brown v.
General Services Administration, 425 U.S. 820, 829 (1976);
Robinson v. Dalton, 107 F.3d 1018, 1020-21 (3d Cir. 1997);
McGuire v. Potter, No. 06-1745, 2006 WL 2883234 at *5 (D.N.J.
Oct. 6, 2006); Edwards v. Borough of Dickson City, 994 F.Supp.2d
616, 621 (M.D. Pa. 2014) ("Given this comprehensive scheme, it
does seem clear, as the Seventh Circuit explains, that Congress
intended allegations of statutory age discrimination (i.e.
violations of the ADEA) to proceed exclusively under the
ADEA.").

Because the United States is immune from suit, there is no
viable claim against the government and the Court does not have
jurisdiction pursuant to 28 U.S.C. § 1346 as alleged in the
Complaint.  Thus, this Court does not have subject matter
jurisdiction over Plaintiff's claims as plead in her Complaint.[3]

---

[3] Defendants also argue that Plaintiff brought suit against
improper parties.  Defendants rightfully assert that Plaintiff
inappropriately brought this matter against the named Defendants
contrary to 42 U.S.C. § 2000e-16(c), which states that "in a
civil action the head of the department, agency, or unit, as
appropriate," is the proper defendant to be named.  Courts in
our Circuit have noted that the head of the federal agency is
the "only cognizable defendant" in discrimination suits under
Title VII, ADEA, and the Rehabilitation Act.  See Wilcher v.
Potter, No. 08-2723, 2010 WL 2545963 at *1 n4 (D.N.J. Jun. 18,
2010).  Even if Plaintiff had named the head of the Department
of Transportation as the sole defendant, the Court would still

b. **Request for Leave to Amend**

"If a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." Phillips v. County of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008); see also Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) ("We have held that even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."); Burrell v. DFS Servs., LLC, 753 F. Supp. 2d 438, 444 (D.N.J. 2010) ("When a claim is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), leave to amend and reassert that claim is ordinarily granted. . . . A claim may be dismissed with prejudice, however, if amending the complaint would be futile.") (citation omitted); see also G.S. v. Penn-Trafford Sch. Dist., 813 Fed. Appx. 799, 803-04 (3d Cir. 2020) (a district court must make a finding about whether an amendment would be inequitable or futile to dismiss a complaint without leave to amend). Thus, the Court must evaluate whether Plaintiff could cure her Complaint, or if the exercise would be inequitable or futile.

Plaintiff requested leave to amend "to name the Proper

---

lack jurisdiction based on sovereign immunity.

Defendants including the United States." (ECF No. 14 at 6). As noted above, an amendment to simply name the correct parties would be futile, as the proper Defendants would also be immune from suit pursuant to the same sovereign immunity analysis set out above.

We also note that providing Plaintiff an opportunity to amend to assert her IIED claim, which she attempts to assert through her response to the motion to dismiss, would also be futile. As discussed above, Title VII and the ADEA provide the exclusive remedy for alleged discrimination stemming from a Plaintiff's federal employment. See Brown, 425 U.S. at 829.

Further, even if Plaintiff were given the opportunity to amend her Complaint to restate her allegations under a federal statute that governs sex, sexual orientation, and age discrimination (such as Title VII or the ADEA) such a claim would be barred by her failure to exhaust administrative remedies and barred by the statute of limitations.

### i. **Plaintiff Failed to Exhaust Administrative Remedies under Title VII and the ADEA**

At the outset, the Court notes that even though Plaintiff alleges she was constructively discharged into retirement and is now a private citizen unaffiliated with any government agency, she would still be required to comply with administrative

exhaustion requirements under Title VII and the ADEA.[4]  See Green v. Brennan, 578 U.S. 547, 549-50 (2016); Marley v. Donahue, 133 F.Supp.3d 706, 715-16 (D.N.J. 2015) (collecting cases) ("In other words, a federal employee's claims under Title VII, the RA, and the ADEA must be, and routinely are, dismissed if the employee fails to properly exhaust.").

In order to exhaust administrative remedies, a plaintiff must first make a report to the EEO Counselor within 45 days of the discriminatory act. See 29 C.F.R. § 1614.105(a)(1); Dalzell v. Astrue, No. 05-755, 2008 U.S. Dist. LEXIS 15901 at *8-9 (W.D. Pa. Mar. 3, 2008).  The second step is to file a formal administrative complaint with the agency within 15 days of receipt of a notice of right to file a discrimination complaint from the EEO counselor.  29 C.F.R. § 1614.105(d); id.  Third, a plaintiff could either appeal the agency's final decision to the EEOC or file a civil action in a federal district court within 90 days of receiving the final action, or if no action has been taken, after 180 days after filing the initial complaint.  29 C.F.R. § 1614.407; see also Marley, 133 F.Supp.3d at 716.  As

---

[4] The ADEA has two routes to judicial review, one which follows the EEOC's administrative process as in Title VII cases, and also an alternative route to judicial review which will be discussed *infra* whereby a plaintiff could file directly in federal court after providing the EEOC with at least 30 days' notice of an intent to sue, within 180 days of the alleged unlawful discrimination.  See 29 C.F.R. § 1614.201(a).

stated above, failure to exhaust administrative remedies in
federal employment discrimination actions is grounds for
dismissal.  <u>Marley</u>, 133 F.Supp.3d at 715-16.

Plaintiff has not plead any facts, or asserted any facts in
their responsive briefing, to indicate that she engaged in the
administrative process and exhausted her administrative remedies
as required, and Defendants affirmatively assert that there is
no FAA record of Plaintiff ever making contact with an EEO
counselor or filing an EEO complaint.  <u>See</u> (ECF No. 9 at Ex. A).[5]

Plaintiff cannot cure this deficiency, as she would be
barred by the statute of limitations.  Although Plaintiff does
not allege her retirement date in her Complaint, Defendants
explain that she retired on November 30, 2019.  Plaintiff does
not suggest otherwise in her response.  Thus, Plaintiff had
forty-five days from November 30, 2019 to submit her initial
filing with the EEO.  Thus, she had until January 14, 2020, to
report to an EEO counselor and begin the administrative process.
Plaintiff filed this Complaint on November 17, 2021, nearly two
years after the statute of limitations had run to report to the
EEO counselor.

---

[5] Plaintiff's Complaint was also deficient of a critical fact
necessary for the Court's assessment of her claims: her date of
her "constructive discharge" upon being forced into retirement.
This information was also provided by Defendants per her
Standard Form 50.  (<u>Id</u>. at Ex. B).  Plaintiff's retirement was
effective on November 30, 2019.

### ii.  **Plaintiff Failed to Give Notice of an ADEA Claim**

While Title VII claims require exhaustion of administrative remedies, a plaintiff raising an ADEA claim may alternatively file directedly in a United States district court after providing the EEOC with "not less than 30 days' notice of an intent to such an action" and must do so "within 180 days of the alleged unlawful practice."  See 29 C.F.R. § 1614.201(a).

There is no indication in the Complaint, or her responsive briefing, that Plaintiff filed a notice with the EEOC of her intent to sue.  Plaintiff would be unable to cure this deficiency as she would have had to give this notice within 180 days of the last discriminatory act.  The last possible discriminatory act to evaluate the statute of limitations would be the date of her retirement, November 30, 2019.  Thus, she would have had until May 28, 2020 to file her 30-day notice with the EEOC of her intent to sue.

### iii.  **Tort Claims Notice Is Separate from EEOC Administrative Process**

The Court notes that in her response brief, Plaintiff asserts for the first time that she had filed a Tort Claims Notice on February 17, 2020 for intentional infliction of emotional distress related to her alleged experience of harassment and hostile work environment due to age, gender, and sexual orientation.  (ECF No. 14 at 3); see also (ECF No. 15 at

Ex. A at 2).  While Plaintiff did not allege an intentional infliction of emotional distress claim in her Complaint, (and therefore it cannot be considered as a claim in this action),[6] plausibly, we consider whether Plaintiff may have thought this filing was sufficient to "give notice" to the government with regards to her alternative ADEA claim.

The Court notes that such "notice" would not be applicable to Plaintiff's Title VII claims because the administrative process provided by Title VII is the exclusive process by which such claims can be brought against a federal employer.  Brown, 425 U.S. at 829; Robinson, 107 F.3d at 1020-21; McGuire, 2006 WL 2883234 at *6-7.  The only means to establish a Title VII claim is to contact an EEO counselor.  Sending a Tort Claim notice to the U.S. Department of Transportation, Federal Aviation Administration is not comparable or equivalent.  See (ECF No. 15 at Ex. A at 1).

In terms of giving "notice" with regards to the ADEA claim through its alternative pathway, the Tort Claim notice fairs no

---

[6] A complaint may not be amended by the briefs in opposition to a motion to dismiss.  Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988).  And, as previously stated, Title VII and the ADEA are the exclusive remedy for federal employees to bring discrimination claims against a federal employer, therefore a Tort Claim would not be a viable alternative for Plaintiff here.  See Brown, 425 U.S. at 829; Robinson, 107 F.3d at 1020-21; McGuire, 2006 WL 2883234 at *6-7 (D.N.J. Oct. 6, 2006); Edwards, 994 F.Supp.2d at 621.

better.  Again, even to engage in the ADEA's alternative pathway
and file directly in a federal court requires a plaintiff to
file a notice of intent to file an age-related discrimination
claim to the EEO 30 days before filing a Complaint in federal
court.  See 29 C.F.R. § 1614.201(a).  Plaintiff's letter that
accompanied the notice describes the notice as "part of
settlement negotiations" and "everything herein is provided for
the purpose of settlement negotiations and other purposes
nothing contained herein may be used in a trial, motion or other
legal proceeding for any reason."  (ECF No. 15 at Ex. A at 1).
Although the terms "settlement negotiations" may infer a
lawsuit, nothing in the letter gives any clear indication if a
suit was already filed or imminent.  Additionally, the Tort
Claim notice itself asserts "NJLAD" as its basis of claim.  (Id.
at 2).  Nothing about the Torts Claim notice gives any
indication that Plaintiff was going to file an ADEA suit in a
federal court, nor was this notice sent to the attention of an
EEO counselor.

### iv. **Equitable Tolling is not Applicable**

The time limits in which a plaintiff must file a Title VII
action, or an ADEA action, is akin to a statute of limitations
rather than a jurisdictional bar, and thus the time limit is
subject to tolling.  See Seitzinger v. Reading Hosp. & Med.
Ctr., 165 F.3d 236, 239-40 (3d Cir. 1999) (citing Zipes v. Trans

World Airlines, Inc., 455 U.S. 385, 393 (1982)) (holding that time limits in Title VII are not jurisdictional but are instead like statutes of limitations).

Equitable tolling is a "rare remedy to be applied in unusual circumstances." Wallace v. Kato, 549 U.S. 384, 396 (2007).  It is appropriate to apply equitable tolling sparingly, with the burden on the plaintiff to demonstrate that the application is warranted; excusable neglect is not acceptable to obtain relief.  Boyce v. Ancora State Hosp., No. 14-0185, 2015 U.S. Dist. LEXIS 167241, at *9-10 (D.N.J. Dec. 15, 2015). Equitable tolling may be invoked in Title VII and AEDA claims "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." Dixon v. Sec'y, United States VA, 607 Fed. App'x 153, 155 (3d Cir. 2015).  The Third Circuit has held that "in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day." Mosel v. Hills Dep't Store, Inc., 789 F.2d 251, 253 (3d Cir. 1986).

Plaintiff has not made any arguments in either her Complaint or Response Brief to indicate that equitable tolling applies.  There is no indication that Plaintiff was actively

19

misled in terms of her available remedies by opposing counsel or her former employer, nor is there any indication that some extraordinary occurrence has prevented Plaintiff from asserting his or her rights, and there is no indication that Plaintiff timely asserted her claims the wrong forum.

If anything, the filing of the Tort Claim notice, while ineffectual, demonstrates that Plaintiff was competent and capable enough to seek counsel early enough to vindicate at least her ADEA claim within the time period required by statute outside of the EEO process, circumstances akin to the Plaintiff in Dixon where the Third Circuit found that Dixon's ability to pursue a claim of unemployment compensation during the time he could have filed his EEOC claim negates any potential argument that an extraordinary circumstance prevented his ability to file his EEOC claims in a timely way.  Dixon, 607 Fed. App'x at 155. Moreover, the inclusion of the "NJLAD" in her Tort Claim notice further demonstrates Plaintiff's intent, however mistaken, was to pursue her claims only under the NJLAD and to forego other claims.  While gross attorney error can be grounds to apply equitable tolling, those circumstances are not present in the case at bar.

To receive equitable tolling an attorney's mistake or lack of action must be beyond "excusable neglect."  Giddens v. UPS Supply Chain Solutions, No. 11-616, 70 F. Supp. 3d. 705, 711 (D.

Del. 2014) (citing Seitzinger, 165 F.3d at 241).  Getting a date

wrong is a mundane mistake, and such errors are considered

attributable to the client.  Seitzinger, 165 F.3d at 240 ("The

usual rule is that attorney errors will be attributed to their

clients.") (internal citations omitted).  Only gross attorney

error, such as an attorney affirmatively lying to a client, or

an attorney abandoning a client due to mental illness, reaches a

level where equitable tolling may be applied.  Id. at 240-41.

The usual rule, that attorney errors will be attributed to their

clients, is applicable here.  Id. at 240.

     The Court finds that, even if Plaintiff was given the

opportunity to amend her Complaint, it would be futile due to

the passage of time.  Ultimately, when a court lacks

jurisdiction to hear the case, it "a fortiori [] lacks

jurisdiction to rule on the merits."  Mortensen, 549 F.2d at 895

n.22.  Therefore, this Court does not have the power to review

this case on the merits and thus will end its analysis here.

## III. **Motion to Seal**

     Local Civil Rule 5.3 has several requirements that the

Parties must address for a court in this District to restrict

public access to court documents:

> (a) the nature of materials or the proceedings
>     at issue;
>
> (b) the legitimate private or public interest
>     which warrants the relief sought;

    (c) the clearly defined and serious injury that would result of the relief sought is not granted;

    (d) why a less restrictive alternative to the relief sought is not available;

    (e) any prior order sealing the same materials in the pending action; and

    (f) the identity of any party or nonparty known to be objecting to the sealing request.

L. Civ. R. 5.3(c)(2).  The party moving to seal must submit a proposed order that contains proposed findings of fact and conclusions of law.  Id.

The Court notes that while litigants have an interest in privacy, the public also has a right to obtain information about judicial proceedings.  In re Avandia Mktg., Sales Practices & Prods. Liab. Litig., 924 F.3d 662, 670-74 (3d Cir. 2019).  When discovery materials are filed as court documents, a more rigorous common law right of access is applied.  Id. at 670.  "In addition to recognizing fewer reasons to justify the sealing of court records, the public right of access — unlike a Rule 26 inquiry — begins with a presumption in favor of public access."  Id.  To rebut the presumption of public access, the party seeking confidentiality must demonstrate "good cause" by establishing that disclosure will cause a "'clearly defined and serious injury to the party seeking closure.'"  Boehringer Ingelheim Pharma GmbH & Co. v. Mylan Pharms., No. 14-4727, 2015

WL 4715307, at *2 (D.N.J. Aug. 7, 2015) (quoting Publicker
Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984)).
"'Broad allegations of harm, unsubstantiated by specific
examples or articulated reasoning,' do not support a good cause
showing." Id. (quoting Cipollone v. Liggett Group, Inc., 785
F.2d 1108, 1121 (3d Cir. 1986), cert. denied, 484 U.S.
976(1987)).

The Court notes that this litigation involves a government
agency or a matter of "public concern," and as such the
threshold for sealing is elevated. See Pansy v. Borough of
Stroudsburg, 23 F.3d 772, 788 (3d Cir. 1995).

The nature of the material presented as Exhibit B to
Defendants' brief in support of its motion to dismiss, (ECF Nos.
9, 10), is the kind of material that is generally considered
confidential by courts: a federal agency document that contains
employment history. The document, Plaintiff's Standard Form 50,
is a personnel document maintained by the FAA containing
Plaintiff's employment history and as such it is protected by
the Privacy Act, 5 U.S.C. § 522a, et seq.[7]  This type of material

---

[7] 5 U.S.C. § 522a(b)(11) states in pertinent part: "No agency
shall disclose any record which is contained in a system of
records by any means of communication to any person, or to
another agency, except pursuant to a written request by, or with
the prior written consent of, the individual to whom the record
pertains, unless disclosure of the record would be— . . . (11)
pursuant to the order of a court of competent jurisdiction[.]"

is also considered confidential by Local Civil Rule 5.3[8] and the Electronic Case Filing Policies and Procedures.[9]

   The Court notes that in its own filing procedures documents that contain employment history should be treated with caution because of the risk of sensitive information being contained therein, and the disclosure of this type of information poses a substantial risk of harm to individuals. (*Supra* at 23-4 n.8 & 9).

   The Defendants assert that the requested action, to seal the document entirely, is the best method of protecting the confidential information and that there is no less restrictive alternative to protect their information and the Court agrees. Further, such sealing of the document is required, absent a court order, under the Privacy Act.

---

[8] Local Civil Rule 5.3(a)(3) states in pertinent part: "(3) This rule shall not apply to any materials or judicial proceedings which must be sealed or redacted pursuant to statute or other law."

[9] Electronic Case Filing Policies and Procedures, As Amended April 3, 2014, THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY, Section 17. Sensitive Information, states in pertinent part: "As the public may access case information through the PACER system, sensitive information should not be included in any document filed unless the Court orders otherwise. . . . The Court may still require the party to file a redacted copy for the public file.  In addition, caution must be exercised when filing documents that contain the following: (1) Personal identifying numbers, such as a driver's license number; (2) Medical records, treatment, and diagnoses; (3) Employment history; (4) Individual financial information; and (5) Proprietary or trade secret information.

The Court notes that the motion is not a joint one as contemplated by Local Civil Rule 5.3.  Defendants did not include an Index with the Motion to Seal and did not address whether an attempt was made by Defendants to receive Plaintiff's consent to the filing.  No Discovery Confidentiality Order or any other requests for sealing have been made in the matter.

While Defendants have not met the letter of Local Civil Rule 5.3, they have articulated sufficient specific allegations of harm to show good cause to justify sealing these materials. See Publicker, 733 F.2d at 1070-71.

## CONCLUSION

For the reasons expressed above, Defendants' Motion to Dismiss (ECF No. 9) will be granted and Defendants' Motion to Seal (ECF No. 11) will be granted.  Plaintiff's request to Amend her Complaint (ECF No. 14) will be denied with prejudice as this Court has made sufficient findings of its futility.

An appropriate Order will be entered.


Date: February 27, 2023              /s Noel L. Hillman
At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.